# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CV Action No. 3:12-cv-11545-MAP

|  |  |
|---|---|
| MARK A. LARACE<br>TAMMY L. LARACE<br><br>Petitioners<br><br><br>WELLS FARGO BANK, N.A. AS TRUSTE<br>TRUSTEE FOR ABFC 2005-OPT1 TRUST<br>ABFC ASSET BACKED CERTIFICATES<br>SERIES 2005-OPT1;<br>AMERICAN HOME MORTGAGE<br>SERVICING<br>OPTION ONE MORTGAGE COMPANY<br>Respondents | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PETITIONERS OPPOSITION
## TO RESPONDENTS' MOTION TO DISMISS PETITIONERS
## PETITON TO TRY TITLE PURSUANT TO G.L. c. 240 §§ 1-5

Petitioners Mark A. LaRace and Tammy L. LaRace ("Petitioners"), by and through their counsel, hereby respectfully submit their Opposition to the Respondents Motion to Dismiss the Petitioners' Petition to Try Title Under G.L. c. 240 §§ 1-5. As an initial matter the Petitoners' hereby respectfully state that the Respondent cannot invoke the subject matter jurisdiction of the federal court, as no federal question is presented, and the Petition filed by the LaRace's in this matter is not an affirmative action to nullify the purported mortgage of the Respondents., therefore this action cannot be heard on diversity grounds either.

## INTRODUCTION

The Petitioner contends that this Motion to Dismiss is a complete non-starter, completely beside the point, and in the end frivolous and made in bad faith.

1

The statutory rubric of G.L. c. 240 §§1-5 along with the recent case of *Bevilaqua v. Rodriguez,* 460 Mass. 762, 766-67 (2011), clearly sets out that once the Petitioner has established that he is a record title holder in possession of the property in question, the only appropriate responses for any adverse claimants would be: i) not to respond at all and have the court bar it forever from enforcing any such adverse claims; ii) to "disclaim [any] relevant interest in the property; or [iii] [to] bring an action to assert" their adverse claim. Their choices, however, does not include a motion to dismiss.[1]

On June 06, 2012, the Petitioners filed their Petition to Try Title, under G.L.c. 240 §§ 1-5, in the Massachusetts Land Court.  G.L. c. 240 § 1 sets out the requirement that a Petition to Try Title shall be brought in "land court".   G.L. c. 185 § 1 states that "The land court department shall have exclusive original jurisdiction of . . . (d) Petitions to require actions to try title to real estate, under sections one to five, inclusive, of chapter two hundred and forty."

Petitions to Try Title come under the exclusive limited original subject matter jurisdiction of the Massachusetts Land Court.  In Massachusetts, a Petition to Try Title is a procedure by which a record title holder who is in possession of said property can seek a judicial determination from the land court regarding the existence of an adverse claim , or by the possibility of one; and where one may exist, to require the party having such an adverse claim to bring an action to try title over against the Petitioner.  Other than raising the issue of the possibility of an adverse claim, the Petitioner need not take any further action or set out any further allegations.  G.L. c. 240 §1.  It is the Adverse Claimants who have the obligation to set out a complaint with sufficient allegations and facts to establish its claim.  Failure to do so allows the land court to

---

[1] Respondents assertions with regards to Homeward Financial (purported successor to AHMSI) are of no moment as the try title statute allows the Petitioners to bring claims as against any potential adverse claimant.

enter a decree forever barring the adverse claimant from enforcing any such claim adversely to the Petitioner.  G.L. c. 240 §2.

An action to quiet title is an in rem action, G. L. c. 240, § 10, brought under the court's equity jurisdiction. See G. L. c. 185, § 1 (k); *First Baptist Church of Sharon v. Harper*, <u>191 Mass. 196</u> , 209 (1906) ("in equity the general doctrine is well settled, that a bill to remove a cloud from the land . . . [requires that] both actual possession and the legal title are united in the plaintiff"). ***In contrast***, an action to try title is an action at law brought against the respondent as an individual. See G. L. c. 240, § 2 ("the court shall enter a decree that [specified adverse claimants] be forever barred from having or enforcing any such claim adversely to the petitioner"); *Clouston v. Shearer*, 99 Mass. 209 , 211, 212-213 (1868) (at time try title statute was enacted in 1851, Massachusetts courts did not yet possess general equity jurisdiction that would permit actions to remove cloud from title [not until 1852]).

<u>In contrast</u>, a quiet title action is an in rem action that requires the plaintiff "not merely to demonstrate better title to the locus than the defendants possess, but requires the plaintiff to prove sufficient title to succeed in its action." *Sheriff's Meadow Found., Inc. v. Bay-Courte Edgartown, Inc.*, <u>401 Mass. 267</u> , 269 (1987). See *U.S. Bank, Nat'l Ass'n v. Ibanez*, <u>458 Mass. 637</u> , 645 (2011); *Loring v. Hildreth,* 170 Mass. 328 (1898). Precedent applicable to one statute, although potentially persuasive, does not control cases brought under the other statute. The distinction between the a try title petition and a quiet title is critical because the petitioner in a try title action may defeat a specified adverse claim through a default or by showing title that is merely superior to that of the respondent. See G. L. c. 240, §§ 2-3; *Blanchard v. Lowell*, 177 Mass. 501 , 504-505 (1901).

The Try Title procedure was recently brought under review before the Massachusetts Supreme Judicial Court, in *Bevilacqua v. Rodriguez* 460 Mass. 762 (2011).[2] The Massachusetts Supreme Judicial Court described the statutory background of a Try Title action as follows:

> "Bevilacqua seeks an order that either compels Rodriguez to bring an action to try his title or forever bars him from enforcing his adverse claims to the property. Try title actions under G. L. c. 240, §§ 1-5, are within the exclusive original jurisdiction of the Land Court. G. L. c. 185, § 1 (d). If Bevilacqua cannot satisfy the jurisdictional requirements of the statute, then the Land Court is without subject matter jurisdiction and the petition must be dismissed. See *Boston Edison Co. v. Boston Redevelopment Auth.*, <u>374 Mass. 37</u> , 46 (1977); *Riverbank Improvement Co. v. Chapman,* 224 Mass. 424, 425 (1916) ("The Land Court is a statutory court, not of general but of strictly limited jurisdiction").

The Massachusetts Supreme Judicial Court went on to explain that a Try Title action is clearly a two (2) step procedure, which initially calls upon the Petitioner to establish, as a condition precedent, sufficient jurisdictional facts necessary to invoke the exclusive original subject matter jurisdiction of the Land Court under G. L. c. 240, § 1.[3]

> "G. L. c. 240, § 1. There are thus two steps to a try title action: the first, which requires the plaintiff to establish jurisdictional facts such that the adverse claimant might be "summoned to show cause why [he] should not bring an action to try [his] claim," and the second, which requires the adverse claimant either to disclaim the relevant interest in the property or to bring an action to assert the claim in question. [Note 3] Id. See *Blanchard v. Lowell,* <u>177 Mass. 501</u> , 504-505 (1901). The establishment of jurisdictional facts, although essential in all cases, is thus a matter of particular salience in the initial stage of a try title action." *Bevilacqua* at 767.

The Petitioners herein clearly meet the two jurisdictional statutory requirements to invoke the exclusive original jurisdiction of the Land Court, as they are; (1) in current possession of the

---

[2] Please see Exhibit A

[3] There appear to be two jurisdictional facts that must be shown to establish standing under G. L. c. 240, § 1. First, it is clear on the face of the statute that only "a person in possession" of the disputed property may maintain a try-title action. Id. Second, although less obviously clear, a plaintiff must hold a "record title" to the land in question. *Blanchard v. Lowell*, supra at 504. *Arnold v. Reed*, 162 Mass. 438 , 440-441 (1894).

property at issue, and (2) they also have their deed recorded upon the Hampden County Registry of Deeds, as record title.[4]

Having met the jurisdictional basis for the bring of petition to try title, and having set out their interest in the premises, describing the land, the claims and the possible adverse claimants so far as known to them, the burden of going forward falls upon the adverse claimants.  The land court may have them summonsed to show cause why these adversed claimants should not bring an action to try such claim. Where they have been summonsed, they must either disclaim their interest, or bring an action against the Petitioners to Try Title.

The Respondents' motion to dismiss is an attempt to circumvent the second step of the Massachusetts try title statutory requirement, by obviating the necessity of bringing an action to Try Title.  In part it is based upon the Respondents legally incorrect, and completely inaccurate, description of the holding in *U.S. Bank Nat'l Ass'n v. Ibanez* 458 Mass. 637 (2011), in which Respondents seek to inure to their benefit. Indeed, the Massachusetts Supreme Judicial Court was quite clear in enunciating in *Ibanez*, that the Respondents relied upon a purported assignment of the Petitioners mortgage on the Hampden County Registry of Deeds that Respondents asserted (under oath) was purportedly confirmatory in nature of an earlier assignment (proffered by Respondents) of the Petitioners Mortgage made out in blank (i.e. to no named Grantee).

---

[4] "If the record title of land is clouded by an adverse claim, or by the possibility thereof, a person in possession of such land claiming an estate of freehold therein . . . may file a petition in the land court stating his interest, describing the land, the claims and the possible adverse claimants so far as known to him, and praying that such claimants may be summoned to show cause why they should not bring an action to try such claim." *Bevilacqua* at 766-767

After being faced with the fatal defect in the purported "assignment" on the Hampden County Registry of Deeds, the Respondents then sought to rely on their "securitization documents" (Pooling and Servicing Agreement and Prospectus Supplement) to have assigned the LaRace mortgage to the Respondent Trust in 2005. The SJC rejected such argument stating that the Respondent Trust never proffered any specific indicia that the *LaRace* mortgage was sold to the trust under the controlling terms of its Governing Documents, and therefore was never part of its corpus. The Respondent Trust's controlling terms of its Governing Documents clearly calls for a series of successive absolute sales prior to becoming part of the Respondent Trust's corpus. To reiterate, the earlier assignment of the Petitioners mortgage that the Respondents currently relies upon, currently seeks to confirm the earlier purported  "assignment" made out to no named Grantee, which would make the recorded purported assignment a nullity.

Further still, Respondent purposely seeks to confuse the issue by autonomously determining (and repeatedly stating through legal conclusion) that the Respondent is the "mortgagee". There was never any such determination made by the SJC in *Ibanez* that the Respondent Trust is, or ever was, the current "holder" of the mortgage, as "mortgagee", as the Respondent Trust clearly was never the original "lender" who supplied money to the LaRace family in this transaction, or ever was the named "lender" in the LaRace security interest (mortgage) to which the power of sale was specifically granted to enforce upon to the *LaRace's* premises to Option One.[5] Therefore for all of the foregoing reasons, which will be more fully developed below, the Petitioners hereby respectfully request that this Court abstain from hearing

---

[5] Indeed, which is clearly the impetus for the Petitioners to have filed the instant Try Title Action in the Land Court, as the Respondents have again renewed their attempt to foreclose upon the Petitioners' residence based solely upon the legally deficient recorded purported "assignment" on the Hampden County Registry of Deeds.

this matter, as it lacks the subject matter jurisdiction to do so, and/or in the alternative DENY the

Respondents Motion to Dismiss.

## ARGUMENT

### I.   TRY TITLE STATUTORY REQUIREMNENTS

#### A.  Petitioners Have Established The Statutory Requirements as a Condition Precedent To Invoke The Jurisdiction of The Land Court

 "The establishment of jurisdictional facts, although essential in all cases, is thus a matter of particular salience in the initial stage of a try title action." _Bevilacqua_ at 767.

There appear to be only two jurisdictional facts that must be shown to establish standing under G. L. c. 240, § 1. First, it is clear on the face of the statute that only "a person in possession" of the disputed property may maintain a try-title action.  Second, although less obviously clear, a plaintiff must hold a "record title" to the land in question. *Blanchard v. Lowell*, supra at 504. *Arnold v. Reed*, 162 Mass. 438 , 440-441 (1894). Thus, the Petitioners must only establish that; (1) that they are in current possession of the real property at issue; and (2) that they are the record title holder of the said real property.

The Petitioners clearly meet these two (2) statutory condition precedents, as they are in current possession of the premises, and their deed to the said premises is recorded upon the Hampden County Registry of Deeds at Book 15029 Page 504. Therefore the Petitioners clearly can invoke the specialized original subject matter jurisdiction of the Land Court, as they have established the two (2) necessary condition precedent steps under statute.

#### B.  Respondents Can Either Disclaim Their Interest in The Petitioners Property or File A Try Title Action Against The Petitioners, But Not File a Motion To Dismiss

> "There are thus two steps to a try title action: the first, which requires the plaintiff to establish jurisdictional facts such that the adverse claimant might be "summoned to show cause why [he] should not bring an action to try [his] claim," and the **_second_**, _which requires the adverse claimant either to disclaim the relevant interest in the property or to bring an action to assert the claim in question._ [Note 3] Id. See _Blanchard v. Lowell,_ 177 Mass. 501 , 504-505 (1901)." _Bevilacqua_ at 767

The Petitioners granted their security interest to Option One, not the Respondent Trust. Therefore as a try title is an action in Personam, under the holding enunciated in _U.S. Bank v. Ibanez_, the Petitioners plausibly plead and assert that the Respondent trust is a stranger to their title. Additionally, the Petitioners' (based upon the assertions under oath of Respondents in _Ibanez_) also assert that the balance of the Respondents in this matter are also strangers to their record title. Filing of a Motion to Dismiss is not an option under G.L. c. 240 § 1. By filing this purported "Motion to Dismiss", the Respondents are apparently not disclaiming their interest in the Petitioners real property at issue, and therefore attempting to circumvent the statutorily mandated required second step of a try title action, which requires the Respondents to file a Try Title Action against the Petitioners, in order to "advance" their legally deficient theory(s). However to protect the Petitioners' interests, they will describe the deficiencies in the purported arguments made in the Respondents' Motion to Dismiss.

1. **The Massachusetts Supreme Judicial Court Has Clearly Called Into Question The Invalidity of The Purported "Assignment" of The Petitioners' Mortgage on The Hampshire County Registry of Deeds.**

Here, the Respondent repeatedly states that there is no adverse claim to the Petitioners' record title. Respondent neglects to allow for the statutory wording "**_possibility thereof_**". Under G.L. c. 240 § 1, " A try title action may be brought only where the record title is "clouded by an adverse claim, **_or by the possibility thereof_**". The Respondent goes on to state that, "The

Petitioners "acknowledge" that on May 12, 2008, the Assignment of Mortgage was recorded on the Hampden County Registry of Deeds, and that this assignment ***purports*** to transfer all rights, title and interest to Wells Fargo "as Trustee". Therefore, Respondents acknowledge that the document only purports to "assign" the LaRace mortgage, such concession is appropriate here. (See Respondents Memorandum In Support at p. 8).   The Respondents then make an undocumented leap, where they state in the very next paragraph, "because the mortgage exists, the Petitioners may repay their loan and redeem their legal title and thereafter hold title on their own, or Wells Fargo as Trustee may foreclose under the power of sale in the mortgage". (See Respondents Memorandum In Support at p. 8).   Maybe Petitioners' counsel missed precisely where it has ever been judicially determined that "a valid mortgage exists", and that "Wells Fargo as Trustee" (on behalf of the ABFC 2005-OPT1 Trust) can enforce the power of sale. This legal conclusionary statement, has never been adjudicated, and in fact based upon the Respondents Trust's proffers and statements under oath, it is a legal impossibility.

## 2.   The Petitioners' Have Alleged An Adverse Claim Against Respondents

The Respondent, as is its penchant in the entirety of its Motion to Dismiss, continues to assert legal conclusionary averments. At page 8 of its Memorandum In Support it states that; contrary to Petitioners assertions, the court in *Ibanez* did not invalidate the assignment of mortgage negating Wells Fargo's interest in the property, but instead ruled that the foreclosure was improper because Wells Fargo as Trustee failed to show the Land Court that it was the holder of the mortgage at the foreclosure notices and sale.[6] What the Respondent fails to state that in the SJC examination of the purported "assignment" of the Petitioners' mortgage, it found

---

[6] Please see Exhibit B.

fatal flaws that go to the heart of the validity of the purported assignment. Therefore there exists the "***possibility thereof***", that the Respondents are a stranger to the Petitioners' title.[7]

### a. The SJC Examination of The Respondent Trust's Admissions as to The Purported Assignments of The LaRace Mortgage

The SJC, clearly articulated the required protocol of the Respondent Trust controlling terms in its Governing Documents relative to the purported sale of LaRace note and mortgage to the Respondent Trust in its opinion, where the Respondent Trust admitted the following chain as to specifically how it obtained the rights to the LaRace note and mortgage; (1) the Originator; Option One, was to have assigned the LaRace note and Mortgage to (2) the "Bank of America" through a July 28, 2005 "Flow Sale Agreement", ***in which the LaRace mortgage (security instrument) was assigned "in blank", i.e. to no named Grantee***; (3) Bank of America then "assigned" the LaRace note and mortgage to Asset Backed Funding Corporation (ABFC), "the Depositor", in a mortgage loan purchase agreement. (4) Finally ABFC ("the Depositor") pooled the *LaRace* mortgage loan with others and "assigned" it to Wells Fargo, the Respondent Trust (ABFC 2005 OPT 1 Trust)[8] [9].   The SJC reiterated the oft repeated maxim relative to Massachusetts law with regards to the assignment of mortgage in Massachusetts;

> "Like a sale of land itself, the assignment of mortgage is a conveyance of an interest in land that requires a writing signed by the grantor, see G.L. c. 183 § 3 (quoting *Saint Patrick's Religious Educ. & Charitable Ass'n v. Hale*, 227 Mass.

---

[7] Additionally, the Respondents neglect to take into consideration that there remains an invalid foreclosure deed, based upon the previously invalid foreclosure auction that remains recored upon the LaRace property at Book 17921, Page 87, which is also clearly adverse to the LaRace's title.

[8] See *Ibanez* at 643-645; 649; 650.

[9] The Petitioners wish to affirmatively state as a preemptive measure that they are **not claiming** any third party beneficiary theory to "enforce" the PSA, rather the Petitioners clearly point out that the Respondent Trust is just that; ***a business trust***, which is required to follow the controlling terms of its Governing Documents with specific reference to the purported sale or assignment of the LaRace note and mortgage to the Respondent Trust, which the SJC clearly examined. Further, the only "contract" at issue is the LaRace mortgage contract of which the Petitioners are clearly a party to and the Respondent Trust is clearly not, which provides the Petitioners absolute standing to challenge a purported "assignee" of rights originally granted to another entity.

10

175, 177 (1917). In a Title Theory state like Massachusetts, a mortgage is a transfer of legal title in a property to secure a debt (quoting *Faneuil Investors Group, Ltd. Partnership v. Selectmen of Dennis*, 458 Mass. 1, 6 (2010)." *Ibanez* at 649.

Additionally, the SJC stated that:

"Where as here, mortgage loans are pooled together in a trust and converted into mortgage backed securities, the underlying promissory notes serve as financial instruments generating a potential income stream for investors, but the mortgages securing these notes are still legal title to someone's home or farm and must be treated as such". *Ibanez* at 649.

Therefore, under the holding in *Ibanez,* the purported assignment that the Respondents solely rely upon, must be examined as a transfer of an interest in the Petitioners' land. The SJC has already conducted the said examination.

"Turning to the *LaRace* mortgage, Wells Fargo claims that, before it issued the foreclosure notice, it was assigned the *LaRace* mortgage under the PSA" *Ibanez* at 650.

Therefore, the Respondent Trust has already asserted its position to the Court also precisely how it received the rights of enforcement to the *LaRace* note and mortgage, under the pains and penalties of perjury, which was purportedly through the wording contained within the Respondent Trust's controlling terms of its Governing Document ***PSA*** (Pooling and Servicing Agreement).

In *Ibanez*, the Respondent Trust sought to circumvent the obviously fatal defect of relying upon the purported "assignment" of the LaRace mortgage that was received well after the foreclosure notice and sale. However, in its "zeal" to intentionally circumvent over 200 years of real property law in this Commonwealth, it exposed and admitted the financial industries legally deficient methods (under Massachusetts law with regards to the transfer of land [assignment of

11

mortgage]) of "securitizing" mortgages. The Respondent Trust admitted the following; "Option One executed an assignment of this [LaRace] mortgage ***in blank***."

The SJC quickly picked up on the Respondent Trust's admission;

> "First, the plaintiffs initially contended that the assignments in blank executed by Option One, identifying the assignor, but not the assignee, not only evidence and confirm the assignments that occurred by virtue of the securitization agreements, but are effective assignments in their own right. But in their reply briefs they conceded that the assignments in blank did not constitute a lawful assignment of the mortgages. Their concession is appropriate, we have long held that a conveyance of real property, such as a mortgage, that does not name the assignee conveys nothing and is void". _Ibanez_ at 652.[10]

With regards to the Respondent Trust's reliance upon the "PSA", the SJC further stated that:

> "Where a pool of mortgages is assigned to a securitized trust, the executed agreement that assigns the pool of mortgages, with a schedule of the pooled mortgage loans that clearly and specifically identifies the mortgage at issue as among those assigned, may suffice to establish the trustee as the mortgage holder. **However, there must be proof that the assignment was made by a party that itself held the mortgage** (referencing _In re Samuels_ 415 B.R. 8, 20 (Bankr. D. Mass. 2009)…..See In re Parrish, 326 B.R. 708, 720 (Bankr. N.D. Ohio 2005) "If the claimant acquired the note and mortgage from the original lender, or from another party who acquired it from the original lender, the claimant can meet its burden through evidence that traces the loan from the original lender to the claimant". _Ibanez_ at 651

Here, the Respondent Trust has clearly articulated its position as to precisely how it acquired the rights of enforcement of the LaRace note and mortgage, which it clearly stated "was through the PSA". The Respondent, by making the said admission, has stated that the currently filed purported "assignment" on the Hampden County Registry of Deeds is merely "confirmatory". Such admission is ***not*** merely in the context of correcting the purported receipt the purported "assignment" after the foreclosure auction sale, but in fact for all purposes.

---

[10] See Respondents Document 1-1 (Exhibit A at page 10), The Petitioners have included the Respondent Trust's proffer of the said assignment in blank as part of their

The SJC clearly delineated the precise mandate of the controlling terms of the Respondent Trust's controlling Documents, which required that the *LaRace* mortgage and note, follow through a successive series of sales on its way to becoming part of the Respondent Trust's Corpus, which is the following; (1) the Originator; Option One, was to have assigned the *LaRace* note and Mortgage to (2) the "Bank of America" through a July 28, 2005 "Flow Sale" Agreement", ***in which the LaRace mortgage (security instrument) was assigned "in blank", i.e. to no named Grantee***; (3) Bank of America then "assigned" the LaRace note and mortgage to Asset Backed Funding Corporation (ABFC), "the Depositor", in a mortgage loan purchase agreement. (4) Finally ABFC ("the Depositor") pooled the *LaRace* mortgage loan with others and "assigned" it to Wells Fargo, the Respondent Trust (ABFC 2005 OPT 1 Trust)[11].   The Respondent states (in complete contravention of the PSA it relies upon) that an assignment from Option One to directly the Respondent Trust is valid. Further, the Respondent Trust fails to even address the issue that it admitted under oath, that the purported assignment of mortgage from Option One to Bank of America through a "Flow Sale" agreement was made in blank. The Respondent Trust (as a claimant) has filed to meet its burden through evidence that traces the LaRace loan from the original lender to the claimant (See *Ibanez* at 651, Supra above). Most importantly, the Respondents have failed to proffer any evidentiary foundation that Asset Backed Funding Corporation (ABFC) ["The Depositor"] ever held the LaRace mortgage that it was purporting to assign in the PSA.

> "The PSA, in contrast with U.S. Bank's PPM, uses the language of present assignment ("does hereby….assign and does hereby deliver") rather than an intent to assign in the future. But the mortgage loan schedule Wells Fargo submitted failed to identify with adequate specificity the LaRace mortgage as one of the mortgages assigned in the PSA. Moreover, Wells Fargo provided the Judge with

---

[11] See *Ibanez* at 643-645; 649; 650.

no document that reflected that ABFC (depositor) held the LaRace mortgage it was purportedly assigning in the PSA. As with the Ibanez loan, the record holder

of the LaRace loan was Option One, and **nothing was submitted to the judge which demonstrated that that the LaRace loan was ever assigned by Option One to another entity before publication of the notice and sale**." *Ibanez* at p. 650.[12]

Further, the controlling terms of the Governing Document PSA that the Respondent Trust

states that it relies upon clearly states that any addition to the mortgage pool after the "Closing

Date is a prohibited Transaction under Section 9.02 of the said PSA.[13]

> **Section 9.02 Prohibited Transactions and Activities.**
> None of the Depositor, the Servicer or the Trustee shall sell, dispose of, or substitute for any of the Mortgage Loans, except in a disposition pursuant to (i) the foreclosure of a Mortgage Loan, (ii) the bankruptcy of the Trust Fund, (iii) the termination of any REMIC pursuant to Article X of this Agreement, (iv) a substitution pursuant to Article II of this Agreement or (v) a repurchase of Mortgage Loans pursuant to Article II of this Agreement, **nor acquire any assets for any REMIC constituting part of the Trust Fund**, nor sell or dispose of any investments in the Distribution Account for gain, nor accept any contributions to any REMIC constituting part of the Trust Fund **after the Closing Date**

The "Closing Date" is defined within the controlling terms of the Respondent

Trust's Governing Document PSA at Section 1.01 (Definition); *Closing Date"*: October 31,

2005.  Indeed, the Respondent Trust's Governing Document PSA clearly describes that on the

Closing Date that the Depositor will sell the loans to the Trust. The controlling terms of the

Respondent Trust's Governing Document Prospectus Supplement clearly indicates that there is a

specific universe of loans as of the "Cut Off Date" (October 01, 2005).[14]   With regards to the

---

[12] Thus, the SJC clearly stated that nothing has ever been proffered to show that the LaRace note and mortgage was ever "assigned from Option One, and Option One has ceased operations..

[13] Please See Exhibit C (PSA)

[14] Please see Exhibit D – at p. S-26 -"522 Mortgage Loans with an aggregate principal balance of $81,465,620.63 as of the Cut-off Date. The Adjustable-Rate Mortgage Loans consist of 2,150 Mortgage Loans with an aggregate principal balance of $415,016,377.48 as of the Cut-off Date"

"conveyance" of the corpus (underlying mortgage loans) to the Trust, the controlling terms of the

Governing Document PSA states as follows:

**Section 2.01 Conveyance of Mortgage Loans.**
<u>**The Depositor**</u>, **concurrently with the execution and delivery hereof**, does hereby transfer, assign, set over and otherwise convey to the Trustee, on behalf of the Trust, without recourse for the benefit of the Certificateholders **all the right, title and interest of the Depositor, including any security interest therein for the benefit of the Depositor, in and to (i) each Mortgage Loan identified on the Mortgage Loan Schedules**, including the related Cut-off Date Principal Balance, all interest accruing thereon after the Cut-off Date and all collections in respect of interest and principal due after the Cut-off Date;(ii) property which secured each such Mortgage Loan and which has been acquired by foreclosure or deed in lieu of foreclosure; (iii) its interest in any insurance policies in respect of the Mortgage Loans; (iv) all other assets included or to be included in the Trust Fund; (v) all proceeds of any of the foregoing; (vi) the rights of the Depositor under the Consulting Agreement; and(vii) the rights of the Depositor under the Originator Mortgage Loan Purchase Agreement and the Mortgage Loan Purchase Agreement. Such assignment includes all interest and principal due to the Depositor or the Servicer after the Cut-off Date with respect to the Mortgage Loans. In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with the Trustee, or its designated agent, the following documents or instruments with respect to each Mortgage Loan (a *"Mortgage File"*) so transferred and assigned:(i) the **original Mortgage Note, endorsed in blank** or with respect to anylost Mortgage Note, an original Lost Note Affidavit, together with a copy of the related Mortgage Note; **the original Mortgage with evidence of recording thereon**, and the original recorded power of attorney, if the Mortgage was executed pursuant to a power of attorney, with evidence of recording thereon or, if such Mortgage or power of attorney has been submitted for recording but has not been returned from the applicable public recording office, has been lost or is not otherwise available, a copy of such Mortgage or power of attorney, as the case may be, certified to be a true and complete copy of the original submitted for recording;(iii) **an original Assignment of Mortgage (which may be in blank), in form and substance acceptable for recording;**

**The Trustee agrees to execute and deliver to the Depositor on or prior to the Closing Date an acknowledgment of receipt of the original Mortgage Note (with any exceptions noted), substantially in the form attached as Exhibit F-3 hereto.**

---

The purported "assignment" recorded on the Hampshire Registry of Deeds that the Respondent Trust relies upon is dated **May 07, 2008**, almost three (3) years after the Closing Date mandated in the controlling terms of the Respondent Trust's Governing Document PSA. See also *Hecht v. Malley* 265 U.S. 144, 146 (1924) [15]

To recapitulate,

1. The Respondent Trust has stated under oath that its position is that it relies upon the controlling terms of its Governing Document PSA as to precisely how it purports to have received the right to enforce the LaRace note and mortgage, as the purported "assignment" on the Hampden County Registry of Deeds is merely "confirmatory" of the purported transfer under the "securitization documents" (PSA).

2. The controlling terms of the Respondent Trust' Governing Documents, PSA and Prospectus Supplement requires four (4) sales of the LaRace mortgage.

3. The Respondent Trust has stated under oath that the purported first sale of the LaRace mortgage to Bank of America contained an assignment of mortgage made out in "blank" (to no named Grantee).

4. The SJC stated that an assignment of mortgage is a transfer of an interest in land that requires an executed writing from a named Grantor to a named Grantee, and that an assignment of mortgage is a transfer of an interest in land, and therefore an assignment made to no named Grantee (in blank) is void..

5. The SJC stated that a claimant (such as the Respondent Trust) who relies on its controlling terms of the PSA which clearly states that there are intermediary parties between the originator (Option One and the Respondent Trust), and therefore purporting to have acquired the LaRace note and mortgage from another party(s) who acquired it from the originating "lender" (Option One), must trace the LaRace mortgage from Option One **through all of the intermediary parties**, and specifically provide an evidentiary foundation under proper evidentiary rules that the entity identified as the "Depositor" (ABFC) held the mortgage (and note)

---

[15] The "Massachusetts Trust" is a form of business organization, common in that state, [Footnote 3] consisting essentially of an arrangement whereby property is conveyed to trustees, in accordance with the terms of an instrument of trust, to be held and managed for the benefit of such persons as may from time to time be the holders of transferable certificates issued by the trustees showing the shares into which the beneficial interest in the property *Hecht v. Malley* at p. 146.

that it purported to have assigned to the Respondent Trust, under the PSA it relies upon.

6.  The Respondent Trust has failed to address the fatal purported "assignment in blank".

7.  The Respondent currently relies upon a purported assignment from Option One directly to the Respondent Trust, thereby failing to provide a chain from the originating "lender" to it, or explain the assignment of the LaRace mortgage in blank.

8.  The Respondent Trust currently relies upon a purported "assignment" that was executed on May 08, 2008, almost 3 years after the closing date, which is a prohibited transaction under Section 9.02 of the PSA it currently relies upon.

The Respondents have **_never_** proffered any document relative to whether the Depositor ever held the *LaRace* note and mortgage that it was purportedly "assigning" to the Respondent Trust under the PSA "on the Closing Date" [October 31, 2005]. Therefore, the current assignment that the Respondent Trust relies upon; (1) does not evidence a chain of title from the originating entity to it, (2) contains a purported assignment of the LaRace mortgage in blank (to no named Grantee, (3) fails to follow the controlling terms of the Respondent Trust's Governing Document PSA that it currently relies upon. Therefore, the Petitioners reiterate that the Respondents are strangers to their title, as any interest of the Respondent Trust has been vitiated by the failure to follow the controlling terms of the Trust's Governing Documents, specifically related to the Petitioners note and mortgage, and therefore the LaRace note and mortgage cannot legally be among the corpus of the Respondent Trust..

If the Respondent Trust again tries to state that the assignment it currently relies upon is somehow "confirmatory" in nature, the SJC stated the following:

> "A confirmatory assignment, however cannot confirm an assignment that was not validly made earlier or backdate an assignment being made for the first time(referencing *Scalpen v. Blanchard*, 187 Mass. 73, 76 (1904), "confirmatory deed creates no title but takes the place of the original deed and is evidence of the

making of the former conveyance as of the time when it was made". Where there is no prior valid assignment, a subsequent assignment by the mortgage holder to the note holder is not a confirmatory assignment because there is no earlier assignment to confirm". *Ibanez* at 654.

Here, the Respondent Trust has clearly stated under oath that the purported "assignment" of the Petitioners' mortgage on the Hampden County Registry of Deeds seeks to confirm and rely upon the purported assignment made as part of the transfer of the corpus to the Respondent Trust under its :securitization documents"; the Governing Document PSA. Documentary indicia supplied by the Respondent Trust itself, accompanied by its admissions, clearly establish that the Respondent Trust did not follow the controlling terms specifically with regards to the LaRace note and mortgage, (or may never have transferred the LaRace note and mortgage at all).[16] Thus any earlier claimed assignment confirmed by the recorded assignment would be therefore void.

If the Respondent Trust seeks to rely upon the purported assignment of the *LaRace* mortgage merely because it is recorded, the SJC in *Bevilacqua v. Rodriguez* stated the following:

> "…there is nothing magical in the act of recording an instrument with the registry that invests in an otherwise meaningless document with legal effect. See *S & H Petroleum Corp. v. Register of Deeds for the County of Bristol*, 46 Mass. App. Ct. 535 , 537 (1999) ("The function of a registry of deeds is to record documents. It is essentially a ministerial function . . ."). Recording may be necessary to place the world on notice of certain transactions. See, e.g., G. L. c. 183, § 4 (leases and deed); G. L. c. 203, §§ 2-3 (trust documents). Recording is not sufficient in and of itself, however, to render an invalid document legally significant. See *Arnold v. Reed*, 162 Mass. 438 , 440 (1894); *Nickerson v. Loud*, 115 Mass. 94 , 97-98 (1874) ("mere assertions . . . whether recorded or unrecorded, do not constitute a cloud upon title, against which equity will grant relief"). As a result, it is the effectiveness of a document that is controlling rather than its mere existence. See *Bongaards v. Millen*, 440 Mass. 10 , 15 (2003) (where grantor lacks title "a mutual intent to convey and receive title to the property is beside the point"). The effectiveness of the quitclaim deed to Bevilacqua thus turns, in part, on the validity of his grantor's title." *Bevilacqua* at 771

---

[16] Please see *Ibanez* at p. 650.

If the Respondent Trust seeks to rely upon any statements relative to any purported possession of the Petitioners' note, in this Commonwealth the "mortgage does not automatically follow the note".

> The plaintiffs contend that, because they held the mortgage note, they had sufficient financial interest in the mortgage to allow them to foreclose. In Massachusetts, where a note has been assigned but there is no written assignment of the mortgage underlying the note, the assignment of the note does not carry with it the assignment of mortgage *Barnes v, Boardman*, 149 Mass. 106, 114 (1889). Rather the holderof the mortgage holds the mortgage in trust for the purchaser of the note, who has an equitable right to obtain the assignment of the mortgage, which may be accomplished by by filing an action in court and obtaining an equitable order of assignment" <u>*Ibanez*</u> at 652.[17]

The equitable action that the SJC speaks about above, is in reference to the purchaser of the note bringing a quiet title action.

The Respondent incorrectly states that "as their only basis for pursuing this action, the Petitioners "mistakenly" contend that the SJC in Ibanez invalidated the Assignment of Mortgage from Option One to Wells Fargo as Trustee, creating an adverse claim for title between the parties". (See Respondents Memorandum In Support at p. 8). The Respondent in making this statement; either did not read the *Ibanez* opinion, or intentionally misstates its holding. Unlike the Respondents conjecture and "spin", the Petitioners have been clearly forced to needlessly set forth in the above,  the painstakingly necessary actual  *ratio decidendi* of the SJC in the *Ibanez* opinion.

## II.    PETITIONERS SEEK THEIR ATTORNEY'S FEES AND COSTS FOR DEFENDING THIS BASELESS ACTION

---

[17] The possession of the Note was never litigated in the Land Court Action involving the Respondent Trust, as the Respondent Trust only proffered a purported "copy" of the note, which curiously was presented in bold blue ink

Based upon the Respondents' scienter of the Petitioners' position, and through Respondents' counsel's assertion that he "thoroughly researched" the try title statute, but neglected to determine that a Motion to Dismiss in a try title action is improper at this stage of the proceedings, and/or its applicability for Removal. The Petitioners' hereby respectfully request that this Court make a finding that the entirety of the fees and costs of specifically defending this Motion to Dismiss be borne solely by the Respondents.[18]

WHEREFORE, THE Petitioners Mark A. LaRace and Tammy L. LaRace, respectfully requests the Court abstain from hearing this matter as it lacks the subject matter jurisdiction to entertain the instant action, and/or in the alternative DENY the Respondents Motion to Dismiss, award the Petitioners their attorney's fees and costs of defending this Motion, and any other relief this court deems fit, just, and proper, under these circumstances.

Respectfully Submitted

Plaintiff
Mark A. LaRace
Tammy L. LaRace
By and through their counsel

/s/ Glenn F. Russell, Jr.
Glenn F. Russell, Jr.
Law Office of Glenn F. Russell, Jr.
38 Rock Street, Suite 12
Fall River, MA 02720
Tel.: (508) 324-4545
Fax: (508) 938-0244
russ45esq@gmail.com

---

[18] Although not being affirmatively asserted by the Petitioners', this court also has the ability to review the Respondents' pleadings under the Fed. R. Civ. P., Rule 11 standard, which may be warranted under these circumstances.

## CERTIFICATE OF SERVICE


I, Glenn F. Russell, Jr., attorney for the Petitioner hereby certify that on this the 17th day of September, 2012, true and correct copies of this Opposition to the Respondents' Motion to Dismiss the Petitioners' Petition to Try Title, and Supporting papers, have been served by electronic notification, by way of the ECF/CM system to the registered participants involved in this matter, and further upon the Defendants counsel of record in this matter.


Justin M. Fabella
Maura K. McKelvey
Hinshaw and Culbertson, LLP
28 State Street, 24th Floor
Boston, MA 01915

/s/ Glenn F. Russell, Jr.
Glenn F. Russell, Jr.