UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CV Action No. 3:12-cv-11545-MAP

|  |  |
|---|---|
| MARK A. LARACE<br>TAMMY L. LARACE<br><br>Petitioners<br><br>WELLS FARGO BANK, N.A. AS TRUSTE<br>TRUSTEE FOR ABFC 2005-OPT1 TRUST<br>ABFC ASSET BACKED CERTIFICATES<br>SERIES 2005-OPT1;<br>AMERICAN HOME MORTGAGE<br>SERVICING<br>OPTION ONE MORTGAGE COMPANY<br>Respondents | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITIONERS MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR REMAND**

Petitioners Mark A. LaRace and Tammy L. LaRace ("Petitioners"), by and through their counsel, hereby respectfully submit their Motion To Remand this matter back to the Massachusetts Land Court. The Petitioners' hereby state that there is no federal question presented in this matter, and the Respondents have not established the amount in controversy is in excess of $75,000.00, therefore this court lacks the subject matter jurisdiction to hear this matter as it must be remanded back to the Massachusetts state land court..

**<u>INTRODUCTION</u>**

Under 28 U.S.C. § 1447(c), motions to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal. . . ."". Here, the Petitioners are filing their Motion for Remand within the 30 days after the Respondents' filing of the notice of removal described under 28 U.S.C. § 1447(c), however

1

Petitioners' Motion is based upon the lack of subject matter jurisdiction, as Respondents have failed to establish that the Petitioners' petition has made any affirmative claim in an amount in in excess of $75,000.00.[1]

[F]ederal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." *Aldinger v. Howard*, 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). The Constitution provides that "[t]he judicial Power of the United States, shall be vested in one supreme court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. Art. III, § 1. "This language reflects a deliberate compromise, known as the *Madisonian Compromise*, reached at the Constitutional Convention, between those who thought that the establishment of lower federal courts should be constitutionally mandatory and those who thought there should be no federal courts at all except for a Supreme Court with, inter alia, appellate jurisdiction to review state court judgments."

The effect of the compromise is this: "Only the jurisdiction of the Supreme Court is derived directly from the Constitution. "Every other [federal] court ... derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L. Ed. 226 (1922). Accordingly, "we should proceed with caution in construing constitutional and statutory provisions dealing with the jurisdiction of the federal courts," *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971), because the Constitution leaves

---

[1] Additionally, while Motions for Remand based upon subject matter jurisdiction are generally not appealable in their own right, the Petitioners have a continuing right to raise this Court's lack of subject matter jurisdiction over this controversy, both before this court, as well as in any appeal of the entire matter, before the U.S. Court of Appeals for the First Circuit.

Congress the policy choice concerning how far the federal courts' jurisdiction should extend. Under our federal constitutional scheme, the state courts are assumed to be equally capable of deciding state and federal issues.

To the extent that Congress elects to confer only limited jurisdiction on the federal courts, state courts become the sole vehicle for obtaining initial review of some federal and state claims. Cf., e.g., *Victory Carriers*, 404 U.S. at 212, 92 S.Ct. at 425. The importance of both the lower federal courts' constitutional and statutory subject-matter jurisdiction should not be underestimated. "Because of their unusual nature, and because it would not simply be wrong, but indeed would be an unconstitutional invasion of the powers reserved to the states if federal courts were to entertain cases not within their jurisdiction, the rule is well settled that the party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the competence of that court." 13 CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3522, at 61-62 (2d ed.1984) (emphasis added).

When a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power. See *Oliver v. Trunkline Gas Co.*, 789 F.2d 341, 343 (5th Cir.1986) (Higginbotham, J.). "Federal courts are courts of limited jurisdiction by origin and design, implementing a basic principle of our system of limited government. In sum, "we do not visit a mere technicality upon the parties [by remanding to state court because their case falls outside the jurisdictional statutes]. Rather, we uphold a basic tenet of the American system of diffused political and judicial power." Id.

## ARGUMENT

### I. Federal Jurisdiction

The burden is on the removing party to set out the facts necessary to carry the case over the threshold. *See, e.g., Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006). Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868). The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L. Ed. 462 (1884). " Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, ... which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). "We presume that a cause lies outside this limited jurisdiction, ... and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* "The general rule is that the parties cannot confer on a federal court jurisdiction that has not been vested in that court by the Constitution and Congress. This means that the parties cannot waive lack of [subject-matter] jurisdiction by express consent, or by conduct, or even by estoppel; the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants." 13 WRIGHT ET AL.,, § 3522, at 66-68 (citations omitted); see, e.g*., Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

Removal statutes, in particular, must be strictly construed, in as much as the removal of

cases from state to federal court raises significant federalism concerns. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L. Ed. 1214 (1941) (" The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution." ); *see also Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L. Ed. 1248 (1934) (" Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." ); *Maryland Stadium Auth. v. Ellerbe Becket, Inc.,* 407 F.3d 255, 260 (4th Cir.2005) (noting our duty to construe removal jurisdiction strictly because of the significant federalism concerns implicated by removal).

"Doubts about the propriety of removal should be resolved in favor of remanding the case to state court". *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 816 (4th Cir.2004) (*en banc*); *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 425 (4th Cir. 1999). In 1938, the Supreme Court established the basic standard by which to evaluate a challenge that a plaintiff has not met the jurisdictional amount-in-controversy requirement: The rule governing dismissal for want of jurisdiction in cases brought in federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845(1938) (internal citations omitted). "Under *St. Paul,* a plaintiff's allegations of damages that meet the amount-in-controversy requirement suffices unless questioned by the opposing party or the court." *Spielman v. Genzyme Corp.,* 251 F.3d 1, 5 (1st Cir. 2001). Once a defendant questions jurisdiction by challenging the amount of damages alleged in the complaint, the burden shifts to

the plaintiff to show that it is not a legal certainty that the claims do not involve the requisite amount.[1] *Id.* at 4; *Barrett v. Lombardi,* 239 F.3d 23, 30-31 (1st Cir. 2001).

    A. **<u>Subject Matter of the Petitioners' Try Title Petition</u>**

On <u>June 06, 2012</u>, the Petitioners filed their Petition to Try Title, under G.L.c. 240 §§ 1-5, in the Massachusetts Land Court. G.L. c. 240 § 1 clearly sets out the requirement that a Petition to Try Title shall be brought in the "land court". G.L. c. 185 § 1 states that "The land court department shall have exclusive original jurisdiction of . . . (d) Petitions to require actions to try title to real estate, under sections one to five, inclusive, of chapter two hundred and forty."

In Massachusetts, a Petition to Try Title is a procedure by which a record title holder to real property, who is in current possession of said property, can seek a judicial determination from the land court regarding the *possible existence* of an adverse party(s) claim to title to their real property; and where such adverse party(s) may exist, to require the said adverse party(s) having such an adverse claim(s) to bring an action to try title over against the Petitioners. Other than raising the issue of *only the possibility* of an adverse claim, the Petitioners do not set out any further claims or allegations seeking damages, or indeed any affirmative claims at all. Under G.L. c. 240 §1, it is the potential adverse claimant(s) who have the obligation to set out a complaint against the Petitioners with sufficient allegations and facts to establish its/their claim. G.L. c. 240 §2. Thus, the Petitioners have not filed any affirmative "complaint" seeking damages from the Respondents in the amount of $75,000.00 or greater.

**B.** *Bevilacqua v. Rodriguez* **460 Mass. 762 (2011)**

The Try Title procedure was recently brought under review before the Massachusetts Supreme Judicial Court, in *Bevilacqua v. Rodriguez* 460 Mass. 762 (2011). The Massachusetts Supreme Judicial Court described the statutory background of a Try Title action as follows:

> "Bevilacqua seeks an order that either compels Rodriguez to bring an action to try his title or forever bars him from enforcing his adverse claims to the property. Try title actions under G. L. c. 240, §§ 1-5, are within the exclusive original jurisdiction of the Land Court. G. L. c. 185, § 1 (d). If Bevilacqua cannot satisfy the jurisdictional requirements of the statute, then the Land Court is without subject matter jurisdiction and the petition must be dismissed. See *Boston Edison Co. v. Boston Redevelopment Auth.*, 374 Mass. 37 , 46 (1977); *Riverbank Improvement Co. v. Chapman,* 224 Mass. 424, 425 (1916) ("The Land Court is a statutory court, not of general but of strictly limited jurisdiction").

The Massachusetts Supreme Judicial Court went on to explain that a Try Title action is clearly a two (2) step procedure, which initially calls upon the Petitioner to establish, as a condition precedent, sufficient jurisdictional facts necessary to invoke the exclusive original subject matter jurisdiction of the Land Court under G. L. c. 240, § 1.[2]

> "G. L. c. 240, § 1. There are thus two steps to a try title action: the first, which requires the plaintiff to establish jurisdictional facts such that the adverse claimant might be "summoned to show cause why [he] should not bring an action to try [his] claim," and the second, which requires the adverse claimant either to disclaim the relevant interest in the property or to bring an action to assert the claim in question. [Note 3] Id. See *Blanchard v. Lowell,* 177 Mass. 501 , 504-505 (1901). The establishment of jurisdictional facts, although essential in all cases, is thus a matter of particular salience in the initial stage of a try title action." *Bevilacqua* at 767.

The Petitioners herein clearly meet the two jurisdictional statutory requirements, as a condition precedent, to invoke the exclusive original jurisdiction of the land court, as the

---

[2] There appear to be two jurisdictional facts that must be shown to establish standing under G. L. c. 240, § 1. First, it is clear on the face of the statute that only "a person in possession" of the disputed property may maintain a try-title action. Id. Second, although less obviously clear, a plaintiff must hold a "record title" to the land in question. *Blanchard v. Lowell*, supra at 504. *Arnold v. Reed*, 162 Mass. 438 , 440-441 (1894).

7

Petitioners are; (1) in current possession of the property at issue, and (2) have their deed recorded upon the Hampden County Registry of Deeds, as record title[3].

The statutory rubric of G.L. c. 240 §§1-5 along with the recent case of *Bevilaqua v. Rodriguez,* 460 Mass. 762, 766-67 (2011), clearly sets out that once the Petitioners have established that they are a record title holder in possession of the property in question, and been summonsed by the land court to appear, the only appropriate responses for any adverse claimant(s) would be: i) to "disclaim [any] relevant interest in the property; or [iii] [to] bring an action to assert" their adverse claim.

An action to try title is ***not*** synonymous with an action to "quiet title", as a try title is an action ***at law*** brought against the respondent as an individual. See G. L. c. 240, § 2 ("the court shall enter a decree that [specified adverse claimants] be forever barred from having or enforcing any such claim adversely to the petitioner"); *Clouston v. Shearer*, 99 Mass. 209 , 211, 212-213 (1868) (at time try title statute was enacted in 1851, Massachusetts courts did not yet possess general equity jurisdiction that would permit actions to remove cloud from title [not until 1852]).[4]

***In contrast***, An action to ***quiet title is an in rem action***, G. L. c. 240, § 10, brought under the court's equity jurisdiction. See G. L. c. 185, § 1 (k); *First Baptist Church of Sharon v.*

---

[3] "If the record title of land is clouded by an adverse claim, or by the possibility thereof, a person in possession of such land claiming an estate of freehold therein . . . may file a petition in the land court stating his interest, describing the land, the claims and the possible adverse claimants so far as known to him, and praying that such claimants may be summoned to show cause why they should not bring an action to try such claim." *Bevilacqua* at 766-767

[4] See Bevilaqua at FN5.

*Harper*, 191 Mass. 196 , 209 (1906) ("in equity the general doctrine is well settled, that a bill to remove a cloud from the land . . . [requires that] both actual possession and the legal title are united in the plaintiff"), that requires the plaintiff "not merely to demonstrate better title to the locus than the defendants possess, but requires the plaintiff to prove sufficient title to succeed in its action." *Sheriff's Meadow Found., Inc. v. Bay-Courte Edgartown, Inc.*, 401 Mass. 267 , 269 (1987). See *U.S. Bank, Nat'l Ass'n v. Ibanez*, 458 Mass. 637 , 645 (2011); *Loring v. Hildreth,* 170 Mass. 328 (1898). Precedent applicable to one statute, although potentially persuasive, does not control cases brought under the other statute. The distinction between the a try title petition and a quiet title is critical because the petitioner in a try title action may defeat a specified adverse claim through a default or by showing title that is merely superior to that of the respondent. See G. L. c. 240, §§ 2-3; *Blanchard v. Lowell*, 177 Mass. 501 , 504-505 (1901).

**C. Respondents Allegations In Its Notice of Removal Are Not True or Accurate**

At ¶ 8 of the Respondents Notice of Removal (Document 1), it states that Wells Fargo Bank, as Trustee for ABFC 2005-OPT-1 Trust Asset Backed Certificate Series 2005 OPT1, "is a National Banking Association organized and existing under the laws of the United States of America with its main office as designated in the articles of association in Sioux Falls South Dakota. In fact Wells Fargo, N.A. ***purports to act not in its own capacity, but in the capacity of a purported "trustee"*** on behalf of the certificate holders of the ABFC 2005-OPT-1 Trust, thus the National Association designation is of no moment for Wells Fargo Bank's current role in this action. At ¶ 10 of the Respondents Notice of Removal (Document 1), it states by legal conclusion that "*the amount in controversy is in excess of $103,000, exclusive of interest and costs, which is the principal amount of the "Plaintiffs" first mortgage at issue*". Courts

9

determine whether a party has met the amount-in- controversy requirement by "looking to the circumstances at the time the complaint is filed." *Coventry Sewage Associates, et al., , v. Dworkin Realty Co., et al.,,* 71 F.3d 1, 4; Wright & Miller § 3702 at 28-29 n.31. It is well settled that the question of subject matter jurisdiction is a snapshot of the complaint at the time of removal. Chadwick v. Shell Oil Co., 828 F.Supp. 26, 27 (E.E. La. 1993)

Here, at the time the Petitioners' petition was filed, at most, would require the Respondents to be summonsed to the land court to show cause why they should not file a try title action against the Petitioners. Thus, "looking to the circumstances at the time that the complaint was filed", there are no claims made by Petitioners directly seeking to nullify the Respondents purported mortgage. "Looking at the circumstances at the time Petitioners petition was filed", can only be interpreted as at most, requiring that the land court require the Respondents to file an affirmative try title complaint against the Petitioner,  Thus, the Petitioner is clearly not seeking "damages" or equity from the Respondent sufficient to provide an amount in controversy in excess of $75,000.00.

"If, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff <u>never was entitled to recover that amount</u> . . . the suit will be dismissed." *Speilman v. Genzyme*, 251 F.3d 1, 5 (1st Cir. 2001). It is clear beyond peradventure that the Petitioners cannot recover any amount "claimed" at the time of the filing of their petition , and in fact were never entitled to recover any amount from their pleadings. Petitioners would only be required to defend the try title suit brought by Respondents against them.

## II.     PETITIONERS SEEK THEIR ATTORNEY'S FEES AND COSTS FOR DEFENDING THE RESPONDENTS IMPROPER REMOVAL ACTION

To discourage defendants from using removals as a delaying tactic, the law provides that, "An order remanding the case *may* require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. §1447(c). The standard for an award of attorneys fees with a successful remand was announced by the United States Supreme Court in *Martin v. Franklin Capital Corp.,* 546 U.S. 132 (2005), where the Court said: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) *only* where the removing party lacked an objectively reasonable basis for removal." Id. at 141 (emphasis added).

Here, reviewing the specific Massachusetts state statute involved in this try title matter, Respondents clearly lacked any objectively reasonable basis for removal at the time of the said notice, as nothing in the Petitioners' petition seeks any direct claim seeking damages in an amount in excess of $75,000.00, in order to satisfy diversity jurisdiction, nor is any federal question presented. Based upon the Respondents' scienter of the Petitioners' position, and through Respondents' counsel's assertion that he "thoroughly researched" the try title statute, but neglected to determine that a try title action is jurisdictionally improper for Removal to the limited jurisdiction of the federal court, the Petitioners' hereby respectfully request that this Court make a finding that the entirety of the fees and costs of specifically filing this Motion to Remand be borne solely by the Respondents, as they had no objectively reasonable basis for filing their Notice of Removal to this court.[5] [6]

---

[5] Although not being affirmatively asserted by the Petitioners', this court also has the ability to review the Respondents' pleadings under the Fed. R. Civ. P., Rule 11 standard, which may be warranted under these circumstances.

[6] Please see the email exchange between counsel, whereby Respondents counsel relies upon an 1895 U.S. Supreme Court case from the "Dakota territories" [*Smith v. Adams*, 130 U.S. 167, 9 S.Ct. 566, 569, 32 L. Ed. 895

WHEREFORE, THE Petitioners Mark A. LaRace and Tammy L. LaRace, respectfully requests the Court abstain from hearing this matter as it lacks the subject matter jurisdiction to entertain the instant action, Remand this matter back to the Massachusetts state land court, from whence it came, and award the Petitioners their attorney's fees and costs of drafting this Motion, and any other relief this court deems fit, just, and proper, under these circumstances, as the Respondents clearly lacked any objective reasonable basis to remove this matter to this Court.

Respectfully Submitted,

Petitioners
Mark A. LaRace
Tammy L. LaRace
By and through their counsel

*/s/ Glenn F. Russell, Jr.*
Glenn F. Russell, Jr.
Law Office of Glenn F. Russell, Jr.
38 Rock Street, Suite 12
Fall River, MA 02720
Tel.: (508) 324-4545
Fax: (508) 938-0244
russ45esq@gmail.com

---

(1895) ], which involves a Quiet Title action, not a try title action. The instant matter is a try title action specifically brought under the peculiar requirements of Massachusetts state Law, that represents a complete distinction from a Quiet Title action, in which Massachusetts state law is the controlling law of this action, not that of the "Dakota Territories" that is also attacvhed as part of Exhibit A to this Memorandum.

## CERTIFICATE OF SERVICE

  I, Glenn F. Russell, Jr., attorney for the Petitioner hereby certify that on this the 20th day of September, 2012, true and correct copies of the foregoing Petitioners Memorandum In Support of their Motion to Remand, and its Exhibit A, have been served by electronic notification, by way of the ECF/CM system to the registered participants involved in this matter, and further upon the Defendants counsel of record in this matter.

Justin M. Fabella
Maura K. McKelvey
Hinshaw and Culbertson, LLP
28 State Street, 24th Floor
Boston, MA 01915

                */s/ Glenn F. Russell, Jr.*
                Glenn F. Russell, Jr.