UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
MARK A. LARACE and               )
TAMMY L. LARACE                  )
        Plaintiffs               )
                                 )
             v.                  )  C.A. No. 12-cv-11545-MAP
                                 )
WELLS FARGO BANK, N.A. AS        )
TRUSTEE FOR ABFC 2005-OPT1       )
TRUST ABFC ASSET BACKED          )
CERTIFICATES SERIES 2005-OPT1,   )
AMERICAN HOME MORTGAGE           )
SERVICING, INC., and             )
OPTION ONE MORTGAGE COMPANY      )
        Defendants               )
```

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS AND
PLAINTIFFS' MOTION TO REMAND TO STATE COURT
(Dkt. Nos. 8 & 15)

September 24, 2013

PONSOR, U.S.D.J.

I. INTRODUCTION

Plaintiffs Mark and Tammy LaRace are Springfield residents who purchased a home at 6 Brookburn Street. Defendants at various times have held a mortgage on the property, either as the original mortgagee or an assignee of the mortgage. In June 2012, Plaintiffs filed a petition to

try title against Defendants in the Massachusetts Land Court. In August 2012, Defendants removed the case to this court based on diversity jurisdiction and filed a motion to dismiss. Shortly thereafter, Plaintiffs filed a motion to remand arguing lack of jurisdiction. Based on the recent decision in <u>Lemelson v. U.S. Bank National Association</u>, 721 F.3d 18 (1st Cir. 2013), Plaintiffs' motion will be denied, and Defendants' motion will be allowed.

## II. <u>FACTUAL BACKGROUND</u>[1]

Plaintiffs are citizens of Massachusetts. Defendant Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc., is a Delaware corporation with a principal place of business in Texas; Defendant Wells Fargo as Trustee has its main office in Sioux Falls, South Dakota; and Defendant Sand Canyon Corporation f/k/a Option One is a California corporation with its principal place of business in California. Defendants assert an amount in controversy

---

[1] The facts are drawn from Plaintiffs' Complaint (Dkt. No. 1, Ex. 1) as well as from the Massachusetts Supreme Judicial Court's <u>Ibanez</u> decision. <u>U.S. Bank Nat'l Ass'n v. Ibanez</u>, 458 Mass. 637, 643-45 (2011). As always, for purposes of a motion to dismiss, the court will "assume the truth of all well-pled facts and give [Plaintiffs] the benefit of all reasonable inferences therefrom." <u>Ruiz v. Bally Total Fitness Holding Corp.</u>, 496 F.3d 1, 5 (1st Cir. 2007).

of $103,200.00, the value of the mortgage on the Springfield property.

On May 19, 2005, Plaintiffs mortgaged their Springfield home to Option One for $103,200; the mortgage was recorded that same day.  On May 26, 2005, Option One executed an assignment of the mortgage in blank.  In a July 28, 2005, sale and servicing agreement, Option One assigned the mortgage to Bank of America.  In an October 1, 2005, mortgage loan purchase agreement, Bank of America assigned the mortgage to Asset Backed Funding Corporation (ABFC).  As part of a pooling and servicing agreement (PSA), ABFC pooled the mortgage with others and assigned it to Wells Fargo, as trustee for the ABFC 2005-OPT 1 Trust, ABFC Asset-Backed Certificates, Series 2005-OPT1.

On April 27, 2007, Defendant Wells Fargo filed a complaint in the Land Court seeking both a finding that Plaintiffs were not beneficiaries of the Servicemembers Act and a judgment that a foreclosure could proceed in accordance with the terms of the power of sale.  In the complaint, Wells Fargo represented that it was the "owner (or assignee) and holder of the mortgage" of the Springfield

property.  U.S. Bank Nat'l Ass'n v. Ibanez, 458 Mass. 637, 645 (2011).  On July 3, 2007, the Land Court issued the requested finding and judgment.  In June 2007, as required by statute, Wells Fargo published the notice of sale in The Boston Globe and identified itself as the "present holder" of the mortgage.  Id.

On July 5, 2007, Wells Fargo, as trustee, purchased the Springfield property at a foreclosure sale for a price of $120,397.03 -- significantly below market value.  Almost a year later, on May 7, 2008, Wells Fargo executed a statutory foreclosure affidavit and foreclosure deed.  That same day, Option One -- which was still the record holder of the Springfield mortgage -- executed an assignment of the mortgage to Wells Fargo as trustee.  The assignment was recorded on May 12, 2008, but it contained an effective date of April 18, 2007.  Id.

In October 2008, Wells Fargo brought an action in Land Court to quiet title; specifically, it sought a judgment extinguishing Plaintiffs' right, title, and interest in the property, declaring no cloud on the title, and vesting title in Wells Fargo in fee simple.  Plaintiffs initially did not

answer the complaint, and Wells Fargo moved for default judgment. On March 26, 2009, the Land Court entered judgment <u>against</u> Wells Fargo. The court deemed the foreclosure sale invalid because the statutory notices of sale named Wells Fargo as the "present holder" of the mortgage when it had not yet been assigned the mortgage by Option One.

Wells Fargo appealed this judgment, and in <u>U.S. Bank National Association v. Ibanez</u>, 458 Mass. 637 (2011), the Massachusetts Supreme Judicial Court ("SJC") upheld the lower court's decision. Because Massachusetts recognizes a statutory power of sale, which permits foreclosure without judicial oversight, one who exercises such a power of sale is held strictly to the statutory requirements. <u>Id.</u> at 646. As the SJC noted, "[o]ne of the terms of the power of sale that must be strictly adhered to is the restriction on who is entitled to foreclose." <u>Id.</u> at 647. The SJC underlined a second requirement of proper notice. Both these terms were violated by Wells Fargo. Because it could not establish that it was the holder of the mortgage at the time of notice or sale, Wells Fargo's foreclosure on the

Springfield property was invalid. Accordingly, Wells Fargo was not entitled to a judgement from the Land Court that it had acquired fee simple title to the Springfield property when it purchased the property at the foreclosure sale. Id. at 655.

On June 6, 2012, Plaintiffs filed a petition to try title, pursuant to Mass. Gen. Laws ch. 240, §§ 1-5, in the Massachusetts Land Court. They alleged that "the possibility of an adverse claim" by Defendants existed because Defendants might, sometime in the future, seek again to foreclose on the Springfield property. (Pls.' Compl., Dkt. No. 1, Ex. 1 at 6.) On August 20, 2012, Defendants removed the petition to this court based on diversity jurisdiction and promptly filed a motion to dismiss. Plaintiffs responded with both an opposition and a motion to remand.

Following oral argument on December 3, 2012, the court requested that the parties prepare supplemental submissions on the issue of abstention as set forth in Burford v. Sun Oil Co., 319 U.S. 315 (1943). Shortly after these memoranda arrived, however, the First Circuit issued its decision in

Lemelson. As will be seen, this decision essentially commands dismissal of Plaintiffs' petition, rendering any discussion of abstention unnecessary. The discussion below will begin with Plaintiffs' motion to remand before proceeding to Defendants' motion to dismiss.

### III.   DISCUSSION

A.   Plaintiffs' Motion to Remand.

Defendants removed Plaintiffs' civil action from the Massachusetts Land Court to this court based on diversity jurisdiction. Section 1332 of Title 28 of the United States Code provides for removal of a civil action from state court where the matter in controversy is between citizens of different states and exceeds the "sum or value" of $75,000. 28 U.S.C. § 1332(a). Plaintiffs argue that remand is appropriate because the amount in controversy is less than $75,000. Moreover, Plaintiffs assert that their petition to try title can only be brought in Land Court and Defendants' removal to federal court is an attempt to get around their obligations under Massachusetts law.

Plaintiffs' original petition in Land Court was to try title, pursuant to Mass. Gen. Laws ch. 240, §§ 1-5. This

statute is designed to compel adverse claimants to a piece of property to either assert their claim or forever abandon it. Plaintiffs argue that their petition does not seek damages and, therefore, Defendants cannot claim that the amount in controversy is $75,000. See Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) (stating that generally a plaintiff's allegations of damages controls).

Section 1446(c)(2) provides that "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that the notice of removal may assert the amount in controversy if the initial pleading seeks nonmonetary relief." 28 U.S.C. § 1446(c)(2)(A)(I). Additionally, "removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by a preponderance of the evidence, that the amount in controversy exceeds [$75,000]." § 1446(c)(2)(B).

The burden is on Defendants, as the parties asserting jurisdiction, to show that the statutory requirements have been met. Spielman, 251 F.3d at 4. Defendants stated in their notice of removal that the amount in controversy was

$103,200, which is the principal amount of Plaintiffs' first mortgage. (Dkt. No. 1.) Alternatively, Defendants argue that they can establish by a preponderance of the evidence that the amount in controversy is in excess of $85,000, which is the most recent appraised value of the property at issue.

The record convincingly establishes that Defendants have met the requirements of § 1332 for diversity jurisdiction. It is reasonable to designate the amount in controversy as the value of the mortgage, since Plaintiffs' petition does not specify a damage amount and Defendants' mortgage interest would be extinguished if Plaintiffs were ultimately successful.

Plaintiffs next argue that the "exclusive original jurisdiction" for petitions to try title lies with the Massachusetts Land Court. Bevilacqua v. Rodriguez, 460 Mass. 762, 766 (2011); Mass. Gen. Laws ch. 240, §§ 1-5. Plaintiffs assert that if they meet the two statutory requirements to bring a petition to try title, then the Land Court has exclusive jurisdiction. See Bevilacqua, 460 Mass. at 767 (stating that the two jurisdictional requirements are

(1) that the petitioner be in possession of the property and (2) that the petitioner hold the record title to the property).  Once the petition to try title is properly initiated, Plaintiffs argue, Defendants must either disclaim their interest in the property or bring an action to assert their adverse claim.  They may not, Plaintiffs say, bring a motion to dismiss.

While Bevilacqua does set out the elements necessary to establish standing to proceed under the try title statute, the case does not hold that the Land Court possesses "exclusive jurisdiction" to try these claims.  See Lemelson, 721 F.3d at 22 (stating that Bevilacqua "concerned the factual allegations necessary to establish standing" (emphasis in original)); see Barbosa v. Wells Fargo Bank, N.A., No. 12-cv-122236-DJC, 2013 WL 4056180 (D. Mass. Aug. 13, 2013) (Casper, J.) (granting defendant's motion to dismiss a try title claim removed from state court).  Furthermore, "where the requisite diversity of citizenship and amount in controversy are present, a state statute cannot defeat federal jurisdiction."  Monogram Indus., Inc. v. Zellen, 467 F. Supp. 122, 123 (D. Mass. 1979) (finding

that though "a federal court may not interfere with state probate proceedings nor exercise control over property in the exclusive possession of the state probate court," it may nonetheless make a determination of a debt due from the decedent because a debt so established would then simply "take its place and share of the estate as administered by the probate court").

As Defendants here have established diversity of citizenship and an amount in controversy in excess of $75,000, they have appropriately invoked the jurisdiction of this court. Therefore, Plaintiffs' motion to remand will be denied.

B. <u>Defendants' Motion to Dismiss for Failure to State a Claim</u>.

To defeat Defendants' motion to dismiss, Plaintiffs' well-pleaded allegations, taken as true, must justify recovery on some theory articulated in their complaint. <u>Arruda v. Sears, Roebuck & Co.</u>, 310 F.3d 13, 18 (1st Cir. 2002). Stated another way, "[i]f the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. <u>Iantosca v. Benistar</u>

Admin Servs., Inc., 738 F. Supp. 2d 212, 217 (D. Mass. 2010).

The Massachusetts try title statute provides that "[i]f the record title of land is clouded by an adverse claim, or by the possibility thereof, a person in possession of such land . . . may file a petition in the land court" to try title.  Mass. Gen. Laws ch. 240, § 1.  Massachusetts is a "title theory" state: "a mortgage is a transfer of legal title in a property to secure a debt."  Bevilacqua, 460 Mass. at 773.  When Plaintiffs signed the mortgage with Option One, the title to the property was split into two parts: "the legal title, which becomes the mortgagee's, and the equitable title, which the mortgagor retains."  Id. at 774.  When the mortgage note is paid in full, the two parts of the title merge again, extinguishing any interest the mortgagee once had.

"Inherent in this concept of the mortgagee's defeasible title is the mortgagor's equity of redemption," which permits the mortgagor to redeem the mortgage obligation after its due date, so long as the mortgagee fails to foreclose on the mortgage and thus terminate the equity of

redemption.  Id.  "The crucial point is that a mortgage, by its nature, necessarily implies the simultaneous existence of two separate but complementary claims to the property that do not survive the mortgage or each other."  Id. at 775.  Consequently, though a mortgagee's and mortgagor's economic interests may be adverse, their claims on the property are not.  Id.; see also Lemelson, 721 F.3d at 23-4 (discussing the title theory of mortgage law).

Plaintiffs argue that the statute authorizing petitions to try title provides that such petitions may be brought "[i]f the record title is clouded by an adverse claim, or by the possibility thereof."  Mass. Gen. Laws ch. 240, § 1 (emphasis added).  Accordingly, they contend, they may bring a try title claim since Defendants might try to foreclose on the Springfield property under an invalid assignment of the mortgage.  In disputing Defendant Wells Fargo's characterization of itself as the "mortgagee," Plaintiffs first argue that in Ibanez the SJC found all assignments of the mortgage by Option One to be invalid because of the original assignment on May 26, 2005 made out to a blank grantee.

Even if the SJC never made that determination in Ibanez, Plaintiffs argue that Option One's direct assignment to Wells Fargo (executed on May 7, 2008, and recorded on May 12, 2008) is invalid because Wells Fargo never explained the May 26, 2005, assignment in blank. In other words, the first assignment in blank has continued to corrupt all subsequent assignments of the mortgage. Until that blank assignment is "explained" or addressed, no subsequent assignments of the mortgage by the loan originator (Option One) can be considered valid.

Second, Plaintiffs assert that the ABFC 2005-OPT1 Trust (Trust), on whose behalf Defendant Wells Fargo acts as trustee, does not have a valid interest in the Springfield mortgage. Plaintiffs rely on documents proffered by Defendants in the Ibanez case, specifically the pooling and servicing agreement (PSA), by which the mortgage was assigned to Wells Fargo, as trustee for the Trust. The PSA provided a cut-off date of October 1, 2005, after which no new assets could be added to the corpus of the Trust. Thus, even if the court finds that the May 2008 assignment of the mortgage to Wells Fargo was valid, Plaintiffs argue that

Defendants nonetheless may not assert any interest in the mortgage by the terms of the Trust, which cut off the addition of any more assets after October 1, 2005.

Unfortunately for Plaintiffs, neither of these lines of argument will withstand scrutiny.

To begin, Plaintiffs' claim that Defendant Option One's assignment of the mortgage to Wells Fargo was declared invalid in <u>Ibanez</u> misconstrues the SJC's holding. <u>Ibanez</u> invalidated the foreclosure sale <u>only</u>. The SJC declared that Defendants failed "to abide by the principles and requirements" necessary to effect a valid assignment of a mortgage and thus convey the statutory power of sale. <u>Ibanez</u>, 458 Mass. at 654. Defendants, the SJC said, simply could not establish that they were the holders of Plaintiffs' mortgage at the time they foreclosed on the property. <u>Id.</u> at 655. The SJC did <u>not</u> rule on the question of whether the assignment <u>after</u> the foreclosure was invalid. <u>Id.</u> (holding that Wells Fargo "did not demonstrate that [it was] the holder[] of the Ibanez and LaRace mortgages at the time that [it] foreclosed on these properties, and therefore failed to demonstrate that [it] acquired fee simple title to

these properties by purchasing them at the foreclosure sale").

If there were any doubt about the weakness of Plaintiffs' arguments, the Lemelson decision put them to rest. 721 F.3d at 25. As here, the Lemelson plaintiffs had executed a mortgage on their home; that mortgage, originally held by one company, had been assigned numerous times to various other companies, until the defendants received the promissory note and mortgage. Also as here, the plaintiffs brought a try title claim against defendants who, the plaintiffs asserted, did not have valid or legally operative assignment of the original mortgage. Id. at 21. The district court granted the defendants' motion to dismiss for failure to state a claim because the plaintiffs did not adequately allege the existence of an adverse interest as required for a try title claim.

In affirming the district court, the First Circuit declared that, to proceed with a try title action, the plaintiffs needed to allege an adverse claim, and a defendant's interest in a property as an alleged mortgagee cannot be deemed adverse to the plaintiffs' interest as

these properties by purchasing them at the foreclosure sale").

If there were any doubt about the weakness of Plaintiffs' arguments, the Lemelson decision put them to rest. 721 F.3d at 25. As here, the Lemelson plaintiffs had executed a mortgage on their home; that mortgage, originally held by one company, had been assigned numerous times to various other companies, until the defendants received the promissory note and mortgage. Also as here, the plaintiffs brought a try title claim against defendants who, the plaintiffs asserted, did not have valid or legally operative assignment of the original mortgage. Id. at 21. The district court granted the defendants' motion to dismiss for failure to state a claim because the plaintiffs did not adequately allege the existence of an adverse interest as required for a try title claim.

In affirming the district court, the First Circuit declared that, to proceed with a try title action, the plaintiffs needed to allege an adverse claim, and a defendant's interest in a property as an alleged mortgagee cannot be deemed adverse to the plaintiffs' interest as

mortgagor under Massachusetts law.  In alleging in their try title complaint that they had mortgaged their property, Plaintiffs ipso facto effectively conceded that they had conveyed all legal title to the property.  Since the plaintiffs no longer had legal title to their property, they could not now "commence a try title action against one asserting ownership of only that legal title." Id. at 24. The First Circuit held that, even where a defendant's claim to be a mortgagee might be invalid or legally inoperative, a plaintiff could not employ the try title statute to force the defendant to assert its potential claim.  As Chief Judge Lynch wrote: "Uncertainty as to who holds a valid mortgage does not provide the requisite adversity to cloud a mortgagor's claim of equitable title." Id. at 24 n.7.

Plaintiffs' arguments that Defendants do not hold a valid assignment of the mortgage because of the terms of the trust documents -- though resourceful -- cannot spare them from the holding in Lemelson.[2]  Because Plaintiffs do not

---

[2] Plaintiffs urge the court to follow Varian v. Bank of New York Mellon, No. 12 MISC 462971(GHP), 2013 WL 4537421 (Mass. Land Court Aug. 23, 2013), which denied a motion to dismiss on similar facts.  This court does not find that decision persuasive and, in any event,  the First Circuit's decision in Lemelson obviously controls here.  Lemelson, 721

hold the legal title to the property and seek only to challenge Defendants' claim to be the mortgagee in possession of legal title, Plaintiffs have not alleged an adverse claim. Accordingly, regardless of whether Defendants here hold a valid mortgage on Plaintiffs' property, Plaintiffs' petition to try title lacks an essential element.[3]  Defendants' motion will be granted.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand (Dkt. No. 15) is hereby DENIED, and Defendants' Motion to Dismiss (Dkt. No. 8) is hereby ALLOWED. The clerk will enter judgment for Defendants.  This case may now be closed.

It is So Ordered.

              /s/ Michael A. Ponsor
              MICHAEL A. PONSOR
              U. S. District Judge

---

F.3d at 24 n.8.

[3] Plaintiffs may not be left without recourse. Varian suggests that, "declaratory judgment is readily available" for parties in Plaintiffs' position. Varian, 2013 WL 4537421 at *5 n.6.